# EXHIBIT A

Case 1:21-cv-00269-TAV-CHS Document 1-2 Filed 10/26/21 Page 2 of 28 PageID #: 10

## STATE OF TENNESSEE, COUNTY OF HAMILTON

FILED IN OFFICE
2021 OCT -7 PM 3:27

**DETAINER SUMMONS**

To Any Lawful Officer To Execute and Return: Summon
The Baptiste Group, LLC c/o registered agent Kevin Baptiste, Progressive Investments Group, LLC c/o registered agent Fabiola Fleuranvil, and any other unlawful occupants, of property located at 1914 Vance Avenue, Chattanooga, TN 37404
to appear before the Judge of the General Sessions Court of Hamilton County, Tennessee on
~~October 21, 2021~~ Oct 28, 2021, at 9:00 a.m.,
to be held in Courtroom 6, 2nd floor, 600 Market Street, Chattanooga, Tennessee 37402 to answer the claim by Plaintiff for possession of the property and any damages incurred. Plaintiff claims that Defendants unlawfully possess property in this county having a street address, or otherwise described as:
1914 Vance Avenue, Chattanooga, TN 37404 (the "Property"). Defendants' initial possession of the Property was based on a written lease, which was breached by failing to make rent payments as required by the lease. Defendants remain in possession without permission/authorization by the current owner, Redemption to the Nations. Plaintiff does hold a security deposit. **Plaintiff seeks possession of the Property, any attorneys' fees and costs associated with this action, any possible restitution for damages to the property, and all court costs and litigation taxes.**
Issued 10.7.21 _____
Clerk/Deputy Clerk

**JUDGMENT**

Judgment is granted to Plaintiff(s) against Defendant(s) _____
_____ in the amount of $_____ and all costs and taxes, and for possession of the described property for which a writ of possession shall be issued on Plaintiff's request.
This judgment is based on:
☐ Default of Defendant(s) ☐ Agreement of Parties        ☐ Trial in Court

☐ Case is dismissed and all costs and taxes are to be paid by Plaintiff, for which execution may issue. Dismissal is based on:
☐ Failure to prosecute the suit by Plaintiff(s)        ☐ Non-suit by Plaintiff, requested by: _____

☐ Finding in favor of Defendant(s) after trial

Date: _____        Judge: _____

---

Case No. 21gs7302

**REDEMPTION TO THE NATIONS (nonprofit corporation)**

_____
Plaintiff

1907 Bailey Avenue, Chattanooga, TN 37404
_____
Address

_____
Phone

vs.

**PROGRESSIVE INVESTMENTS GROUP, LLC and THE BAPTISTE GROUP, LLC**
_____
Defendants

Progressive Investments: 670 NW 113th St. Miami, FL 33165;
Baptiste Group: 1914 Vance Avenue, Chattanooga, TN 37404
_____
Address

**DETAINER SUMMONS**
**Court of General Sessions**
(Larry L. Henry), Clerk

By _____, Deputy Clerk
Issued 10.7 , 2020.
Set for 10.28.21 at 9am
Reset for _____

Served Upon ☐ All Named Defendants
☐ All Defendants
Except: _____

| SERVICE | |
|---|---|
| | Served _____, 20_____. |
| | Sheriff/Constable/Process Server |

Nathan I. Kinard (BPR #035721)
Attorney for Plaintiff
Telephone 423-757-0231

Attorney for Defendant
Telephone _____

28306_00/1901/TAG-4841-2872-1918_3

We, <u>Redemption to the Nations</u>, Principal, and <u>Chambliss, Bahner & Stophel, P.C.</u>, Surety, do hereby bind ourselves, our heirs and assigns to said Defendant(s), to pay all costs and damages which shall accrue to said Defendant(s), for the wrongful prosecution of this suite.

**BOND**

Date:_____

_____
Principal                                    Surety

**ORDER**

This the _____ day of _____, 20_____.

_____
Judge

To the best of my information and belief, after investigation of Defendant's employment, I hereby make affidavit that the Defendant is/is not a member of a military service.

**AFFIDAVIT**

_____
Attorney for Plaintiff or Plaintiff

_____
Notary Public
My Commission Exp. _____

*ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____*

## TO THE DEFENDANT(S):

Failure to appear and answer this summons may result in judgment by default being rendered against you for the relief requested. Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these items include items of necessary wearing apparel (clothing) for yourself and your family and trunks and other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to execute it, you may wish to seek the counsel of a lawyer.

28306_00/1901/TAG-4841-2872-1918_3

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD



# COMMERCIAL LEASE AGREEMENT
## (Single – Tenant Facilities)

For and in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **Progressive Investments Group** as tenant (hereinafter referred to as "Tenant"), and **Redemption to the Nations** as landlord (hereinafter referred to as "Landlord"), do hereby enter into this Lease Agreement ("Lease" or "Agreement") on this _____ day of **September**, **2019** ("Binding Agreement Date"). Landlord leases to Tenant, and Tenant leases from Landlord, the Property described as follows: All that tract of land known as: **1914 Vance Avenue; identified on Exhibit A** (Address), **Chattanooga** (City), Tennessee, **37404** (Zip), as recorded in **Hamilton** County Register of Deeds Office, **----** deed book(s) **---** page(s), and/or **-----** instrument no. and further described as:

**See Exhibit A**

together with all fixtures, landscaping, improvements, and appurtenances, all being hereinafter collectively referred to as the "Property", as more particularly described in Exhibit "A", or if no Exhibit "A" is attached as is recorded with the Register of Deeds Office of the county in which the Property is located and is made a part of this Lease by reference.

1. **Term.** term of this lease shall begin either on the earlier of the completion of work described in any attached Work Letter or **See Exhibit B** ("Commencement Date"). The initial term of this Lease shall be for **six** years, **0** months following the Commencement Date ("Expiration Date").

   ☒ **Option to Extend.** This lease shall extend at the end of the term for a period of **--** years **--** months ending on See Exhibit B, if written notice is given to landlord by tenant **---** days prior to the Expiration Date. Any other change in terms shall be agreed upon via an addendum or amendment to this Agreement.

   ☐ **No extension**

2. **Possession.** If Landlord is unable to deliver possession of the Property on the Commencement Date, rent shall be abated on a daily basis until possession is granted. If possession is not granted within **---** days from the Commencement Date, Tenant may terminate this Lease in which event Landlord shall promptly refund all payments and deposits to Tenant. The aforementioned remedies are the sole remedies recoverable from the Landlord for delays in delivery of possession to Tenant. Landlord shall have no liability for any delays in possession caused by strikes, acts of God or nature, or delays directly caused by Tenant's improvements. In the event of such delays, the date of Possession may be extended by the number of days resulting from such delays, not to exceed **---** calendar days; Landlord shall notify Tenant of any such delays. Inclement weather or other delays shall not extend the performance date unless they prevent the completion of work which would otherwise have been actually performed. Tenant acknowledges that Tenant has inspected the Premises and that it is fit for its stated use as described herein.

3. **Rent.** Tenant shall pay base rent ("Base Rent") to Landlord without demand, deduction or setoff, in advance, payable as follows:

   Throughout the Term, Tenant will pay a "base rent" of forty thousand, U. S. Dollars ($40,000), per month; ($2,880,000.00), in total rents paid during the initial term of the Lease.

   The first year's, "Base Rent" monthly payments (months 1-12) will be paid to Landlord in advance within three days after the end of the "Due Diligence Period"; with the next Base Rent monthly payment due in month thirteen (13) of the initial Lease Term.

   Rent shall be due, without notice or demand, on the first day of each month during the term of the Lease or any renewals or extensions thereof, at the address set forth in the Notice Section of this Lease (or at such other address as may be designated from time to time by Landlord in writing). If the Rent Commencement Date begins on the second (2nd) through the last day of any month, the initial Rent and the last month's Rent shall be prorated for that portion of those months. The initial month's Rent shall be paid at the time of leasing the Property. Tenant shall also pay additional rent ("Additional Rent") as may be provided elsewhere in this Lease. Such Additional Rent shall be paid in the same manner as the Base Rent. Base Rent and any Additional Rent shall be collectively referred to as "Rent".

This form is copyrighted and may only be used in real estate transactions in which **Judy Holley** is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

TENNESSEE REALTORS
Copyright 2015 © Tennessee Realtors®
CF421 – Commercial Lease Agreement, Page 1 of 14
Version 01/01/2019

instanetFORMS

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

4. **Late Payment; Service Charge for Returned Checks.** Rent not paid in full by the fifth (5th) day of the month shall be late. Landlord shall have no obligation to accept any Rent not received by the fifth (5th) of the month. In the event a check is returned by the institution upon which it is drawn for any reason, Tenant shall pay a fee of $ __300.00__ . If late payment is made and Landlord accepts the same, the payment must be in the form of cash, cashier's check or money order and must include a late charge of $__800.00__ and, if applicable, a service charge for any returned check as stated above. Landlord reserves the right to refuse to accept uncertified funds from Tenant after one or more of Tenant's payments have been returned by the bank unpaid. Tenant waives notice and demand as to all payments of Rent due hereunder.

5. **Security Deposit.**
   A. **Security Deposit to be Held by Landlord or Broker.** *[Check one. The section not marked shall not be a part of this Agreement.]*

      ☒ **Landlord Holding Security Deposit.**
      (1) Tenant has paid to Landlord as security for Tenant's fulfillment of the conditions of this Lease a security deposit of _____ Dollars ($ __0.00__ ) in cash, money order and/or check ("Security Deposit").

      (2) Landlord shall deposit the Security Deposit in Landlord's general account with Landlord retaining the interest if the account is interest bearing. Tenant acknowledges and agrees that Landlord shall have the right to use such funds for whatever purpose Landlord sees fit, and such funds will not be segregated or set apart in any manner.

      (3) Tenant recognizes and accepts the risk of depositing the Security Deposit with Landlord. Tenant acknowledges that Tenant has not relied upon the advice of any Broker in deciding to pay such Security Deposit to Landlord. Landlord and Tenant acknowledge and agree that:

         (a) Broker has no responsibility for, or control over, any Security Deposit deposited with Landlord;

         (b) Broker has no ability or obligation to insure that the Security Deposit is properly applied or deposited;

         (c) The disposition of the Security Deposit is the sole responsibility of Landlord and Tenant as herein provided; and

         (d) Landlord and Tenant agree to indemnify and hold harmless Broker and Broker's affiliated licensees against all claims, damages, losses, expenses or liability arising from the handling of the Security Deposit by Landlord.

      (4) Landlord shall return Security Deposit to Tenant, after deducting any sum which Tenant owes Landlord hereunder, or any sum which Landlord may expend to repair Property arising out of or related to Tenant's occupancy hereunder, abandonment of the Property or default in this Lease (provided Landlord attempts to mitigate such actual damage), including but not limited to any repair, replacement, cleaning or painting of the Property reasonably necessary due to the negligence, carelessness, accident, or abuse of Tenant or Tenant's employees, agents, invitees, guests, or licensees. In the event Landlord elects to retain any part of the Security Deposit, Landlord shall promptly provide Tenant with a written statement setting forth the reasons for the retention of any portion of the Security Deposit, including the damages for which any portion of the Security Deposit is retained. The use and application of the Security Deposit by Landlord shall be at the discretion of the Landlord. Appropriation by Landlord of all or part of the Security Deposit shall not be an exclusive remedy for Landlord, but shall be cumulative, and in addition to all remedies of Landlord at law or under this Lease. The Tenant may not apply the Security Deposit to any Rent payment.

      ☐ **Broker Holding Security Deposit.**
      (1) Tenant has paid to Broker _____ -----  _____ (acting as "Broker/Holder") located at _____ ----- _____ (Address of Broker/Holder) as security for Tenant's fulfillment of the conditions of this Lease ("Security Deposit") _____ Dollars ($ __0.00__ ) in ☐ cash, ☐ money order and/or ☐ check.

      (2) Broker/Holder shall deposit the Security Deposit in Broker/Holder's escrow/trustee account (with _____ ----- retaining the interest if the account is interest bearing) within five (5) Banking Days from the Binding Agreement Date. In the event that Broker/Holder's escrow/trustee account is interest bearing, interest on the Security Deposit shall be disbursed in the following manner: -----

This form is copyrighted and may only be used in real estate transactions in which _____ **Judy Holley** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

TENNESSEE REALTORS
Copyright 2015 © Tennessee Realtors®
CF421 – Commercial Lease Agreement, Page 2 of 14
Version 01/01/2019

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

(3) The Broker/Holder shall disburse the Security Deposit only as follows: (a) upon the failure of the parties to enter into a binding lease; (b) upon a subsequent written agreement signed by all parties having an interest in the funds; (c) upon order of a court or arbitrator having jurisdiction over any dispute involving the Security Deposit; (d) upon a reasonable interpretation of this Agreement by Broker/Holder; (e) as provided in the General Provisions section below of this Paragraph; or (f) upon the termination of the agency relationship between Landlord and Broker/Holder, in which event Broker/Holder shall only disburse the Security Deposit to another licensed Tennessee Real Estate Broker selected by Landlord, unless otherwise agreed to in writing by Landlord and Tenant, after notice by Landlord to Broker/Holder and Tenant. Prior to disbursing the Security Deposit pursuant to a reasonable interpretation of this Agreement, Broker/Holder shall give all parties seven (7) days notice stating to whom and in what amounts the disbursement will be made. Any party may object in writing to the disbursement, provided the objection is received by the Broker/Holder prior to the end of the seven (7) day notice period. All objections not raised in a timely manner shall be waived. In the event a timely objection is made, Broker/Holder shall consider the objection and shall do any or a combination of the following: (a) hold the Security Deposit for a reasonable period of time to give the parties an opportunity to resolve the dispute; (b) disburse the Security Deposit and so notify all parties; and/or (c) interplead the Security Deposit into a court of competent jurisdiction. Broker/Holder shall be reimbursed for and may deduct from any funds interpleaded its costs and expenses, including reasonable attorney's fees. The prevailing party in the interpleader action shall be entitled to collect from the other party the costs and expenses reimbursed to Broker/Holder. No party shall seek damages from Broker/Holder (nor shall Broker/Holder be liable for the same) for any matter arising out of or related to the performance of Broker's/Holder's duties under this Security Deposit paragraph.

**B. General Provisions Regarding Security Deposit.**

(1) In the event any Security Deposit check is not honored, for any reason, by the bank upon which it is drawn, the holder or Broker/Holder thereof shall promptly notify the other parties and Broker(s) to this Lease. Tenant shall have three (3) Business Days after notice to deliver good funds to the holder or Broker/Holder. In the event Tenant does not timely deliver good funds to the holder or Broker/Holder, the Landlord shall have the right to terminate this Agreement upon written notice to the Tenant.

(2) The entire Security Deposit, if held by Landlord, will be returned to Tenant within thirty (30) days after the Property is vacated if:

(a) The term of the Lease has expired or the Lease has been terminated in writing by the mutual consent of both parties;

(b) All monies due under this Lease by Tenant have been paid;

(c) The Property is not damaged and is left in its original condition, normal wear and tear excepted;

(d) All keys have been returned; and

(e) Tenant is not in default under any of the terms of this Lease.

**6. Repairs and Maintenance.** Tenant agrees that no representations regarding the Property or the condition thereof and no promises to alter, decorate, improve, or repair have been made by Landlord, Broker, or their agents unless specified in this Lease.

The following shall be kept in good working order and repair, normal wear and tear excepted, by either the Landlord or Tenant as follows *[Check all that apply. The sections not marked shall not be part of this Agreement]*:

| | TENANT | LANDLORD | | TENANT | LANDLORD |
|---|---|---|---|---|---|
| Heating system | ☒ | ☐ | Elevators | ☐ | ☐ |
| Plumbing system | ☒ | ☐ | Air conditioning system | ☒ | ☐ |
| Parking area | ☐ | ☒ | Electrical system/fixtures | ☐ | ☒ |
| Driveway | ☐ | ☒ | Exterior walkways | ☐ | ☒ |
| Building exteriors | ☐ | ☒ | Interior hallways | ☒ | ☐ |
| Smoke detector | ☒ | ☐ | Lobby | ☒ | ☐ |
| Terrace/patio | ☒ | ☐ | Loading area | ☐ | ☒ |
| Restrooms | ☒ | ☐ | Trash facilities | ☒ | ☐ |
| Stairs | ☒ | ☐ | Landscaping | ☒ | ☐ |
| Exterior windows | ☒ | ☐ | Roof | ☐ | ☒ |
| Security alarm | ☒ | ☐ | Other _____ | ☐ | ☐ |

This form is copyrighted and may only be used in real estate transactions in which _____ **Judy Holley** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

TENNESSEE REALTORS
Copyright 2015 © Tennessee Realtors®
CF421 – Commercial Lease Agreement, Page 3 of 14

Version 01/01/2019

InstanetFORMS

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

Any item not mentioned herein but existing on the Property (other than furniture, fixtures and equipment of Tenant) shall be maintained by ☐ Landlord ☒ Tenant *[Check one. The section not marked shall not be a part of this Agreement.]*

Upon receipt of written notice from Tenant, Landlord shall, within a reasonable time period thereafter, repair all defects in those facilities and systems that are the responsibility of Landlord to maintain in good working order and repair. If Tenant does not promptly perform its maintenance and repair obligations as set forth herein, Landlord may make such repairs and/or replacements and supply Tenant with an invoice for said repairs and/or replacements. Tenant shall promptly pay the costs of the same within _30_ days of receipt of invoice. Tenant waives any further notice of amount due for any repairs or replacements under this Lease. Landlord shall not be liable to Tenant for any damage caused by any of the above referenced systems or facilities or by water coming through or around the roof or any door, flashing, skylight, vent, window, or the like in or about the Property, except if such damage is due to the gross negligence or willful misconduct of Landlord. Tenant shall be responsible for the reasonable costs of repairs made necessary by the negligent or willful misconduct of Tenant (including Tenant's employees, agents, invitees, guests, or licensees).

7. **Services.** Landlord shall provide, at Landlord's expense, the following services *[Check all that apply. The sections not marked by Landlord shall not be part of this Agreement]:*

   ☐ General cleaning and janitorial service of the interior of the Property _--_ times a week.

   ☐ Concierge service as follows: _____--- _____

   ☐ Parking attendant as follows: _____--- _____

   ☐ Property monitor as follows: _____--- _____

   ☐ Trash collection service _--_ times per week.

   ☐ Soap, paper towels, and toilet tissue for restrooms _--_ times per week.

   ☐ Replacement of all light bulbs and repair and maintenance of all light fixtures located in the interior of the Property _____--- _____

   ☒ Other _____**None**_____

Landlord shall not be liable for the nonperformance or inadequate performance of such services by third parties. Tenant shall be responsible for the costs and provision of any services that Landlord has not expressly agreed to pay for in this Lease. Tenant agrees to provide services not provided by Landlord that are necessary to keep the Property in good order, condition, and repair, normal wear and tear excepted. If Tenant does not provide such services, Landlord may then provide such services and supply Tenant with an invoice for said repairs and/or replacements. Tenant shall promptly pay Landlord the costs for such services within ____ days of receipt of invoice. Tenant waives any further notice of amount due for any repairs or replacements under this Lease.

8. **Utilities.** The services and/or utilities set forth below serving the Property shall be paid by either the Landlord or Tenant as follows *[Check all that apply. The sections not marked shall not be part of this Agreement]:*

| UTILITY | TENANT | LANDLORD | UTILITY | TENANT | LANDLORD |
|---|---|---|---|---|---|
| Water | ☒ | ☐ | Sewer | ☒ | ☐ |
| Electricity | ☒ | ☐ | Natural Gas | ☒ | ☐ |
| Garbage | ☒ | ☐ | Cable Television | ☒ | ☐ |
| Telephone | ☒ | ☐ | Internet Service | ☒ | ☐ |
| Other | | | | ☐ | ☐ |

Tenant shall be responsible for the costs of any utilities that Landlord has not expressly agreed to pay for in this Lease. Tenant must provide proof of payment of final bills for all utilities or services termination (cutoff) slips. Landlord may, at Landlord's option, pay utilities and be reimbursed by Tenant on the first of the following month. Landlord shall not be liable for any interruptions or delays in the provision of utility services unless such interruptions or delays shall be caused by Landlord's gross negligence or willful misconduct.

9. **Termination / Holding Over.** Either party may terminate this Lease at the end of the Term by giving the other party _90_ days written notice prior to the end of the Term. If neither party gives notice of termination, a Holding Over period shall result. Any Holding Over by the Tenant of the Property after the expiration of this Lease shall operate and be

This form is copyrighted and may only be used in real estate transactions in which **Judy Holley** is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

TENNESSEE REALTORS
Copyright 2015 © Tennessee Realtors®
CF421 – Commercial Lease Agreement, Page 4 of 14

Version 01/01/2019

Instanet FORMS

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

construed as a tenancy from month to month only with Base Rent in an amount equal to __110__ % of the Base Rent payable in Paragraph 3 herein. All other terms of the Lease will remain in force, subject to the terms of this paragraph.

**10. Sublet and Assignment.** Tenant may not sublet the Property in whole or in part or assign this Lease without the prior written consent of Landlord. This Lease shall create the relationship of Landlord and Tenant between the parties hereto; no estate shall pass out of Landlord and this Lease shall create a usufruct only. In the event Landlord shall assign this Lease, the assignee thereof shall be responsible to timely pay Brokers all commissions and other sums owed to them hereunder.

**11. Right of Access, Signage.** Landlord and Landlord's agents shall have the right to access the Property for inspection, repairs and maintenance during reasonable hours. In the case of emergency, Landlord may enter the Property at any time to protect life and prevent damage to the Property without liability for such entry. During the last __-__ months of the term, Landlord and/or Landlord's agents may place a "for rent" or "for sale" sign on the interior and exterior of the Property, and may show Property to prospective tenants or purchasers during reasonable hours. Tenant agrees to cooperate with Landlord, Landlord's agent and Brokers who may show the Property to prospective tenants and/or purchasers. Tenant shall secure valuables and agrees to hold Landlord and/or Landlord's agent and Brokers harmless for any loss thereof. For each occasion where the access rights described above are denied, Tenant shall pay Landlord the sum of $ __0.00__ as liquidated damages; it being acknowledged that Landlord shall be damaged by the denial of access, that Landlord's actual damages are hard to estimate, and that the above amount represents a reasonable pre-estimate of Landlord's damages rather than a penalty.

Without Landlord's prior written permission, Tenant shall not place any sign, advertising matter, or any other things of any kind on any part of the outside walls or roof of the Property or on any part of the interior of the Property that is visible from the exterior of the Property. Tenant shall maintain all such permitted signs, advertising matter, or any other thing of any kind in good condition and repair. Tenant agrees to remove at its cost all such permitted signs, advertising matter, or any other things of any kind at the end of this Lease. Landlord shall have the right to remove prohibited signs, advertising matter or any other things of any kind at the expense of the Tenant.

**12. Use.** The Property shall only be used for the purposes set out as follows:
**Tennessee State Licensed Child Care Facility, operated by The Baptiste Group, under Federal Grant Award 90ZU0278-01-00, (the "Permitted Use").**

The Property shall be used so as to comply with all federal, state, county, and municipal laws and ordinances and any applicable rules and regulations. Tenant shall not use or permit the Property to be used for any disorderly or unlawful purpose; nor shall Tenant engage in any activity on the Property which would endanger the health and safety of others or which otherwise creates a nuisance.

**13. Property Loss.** Storage of personal property by Tenant shall be at Tenant's risk and Landlord shall not be responsible for any loss or damage. Tenant shall be responsible to insure Tenant's personal property against loss or damage. Landlord shall not be responsible for any damage to Tenant's property, unless such damage is caused by Landlord's gross negligence or willful misconduct.

**14. Default.**
    **A. Failure to pay Rent or Failure to Reimburse Landlord for damages or costs.** If Tenant fails to pay Rent or fails to reimburse Landlord for any damages, repairs or costs when due, Tenant shall be deemed to be in default and Landlord shall have the right to terminate this Lease by giving fifteen (15) days written notice to Tenant and to accelerate all remaining payments that Tenant is required to pay under this Lease. These payments shall be due and payable fifteen (15) days after Tenant receives the aforementioned notice. Landlord and Tenant acknowledge that Landlord shall be damaged by Tenant's default, that Landlord's actual damages are hard to estimate, and that the above amount represents a reasonable pre-estimate of Landlord's damages rather than a penalty. If Landlord accelerates as provided in this subparagraph, it shall seek another tenant for the Property and credit any amounts received to the Tenant, less the following:
        (1) reimbursement for all expenses incurred as a result of Tenant's failure to perform its obligations under the Lease;
        (2) the costs of securing another tenant, including, but not limited to, advertising and brokerage commissions; and
        (3) the costs of altering, dividing, painting, repairing, and replacing the Property to accommodate a new tenant. Landlord's rights expressed herein are cumulative of any and all other rights expressed in this Lease. Tenant shall remain liable for Rent from and after any action by Landlord under a proceeding against Tenant for Holding Over or detainer warrant, whether or not Tenant retains the right to possession of the Property.

This form is copyrighted and may only be used in real estate transactions in which _____ **Judy Holley** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

**B. Cure Period.** If Tenant defaults under any term, rule, condition or provision of this Lease, excluding failure to pay Rent or failure to reimburse Landlord for any damages, repairs or costs when due, Landlord shall provide Tenant with written notice of the breach. Tenant shall have __30__ Business Days ("Cure Period") within which Tenant may cure said breach. In the event such default is curable within the cure period and Tenant has not cured the breach within the Cure Period, Landlord may, at his option, terminate this Lease by delivering written notice thereof to Tenant and pursue any remedies available herein or available to Landlord at law. If default is not curable within the cure period, but Tenant is diligently pursuing the cure, Landlord may allow Tenant additional days through a separate agreement to cure.  In the event that Tenant cures the breach during the aforementioned Cure Period, a second violation of this Agreement within __6__ months shall be grounds for the Landlord to terminate this Lease by providing written notice without an additional Cure Period.

**C.** All rights and remedies available to Landlord by law or in this Lease shall be cumulative and concurrent.

**D.** In the event that either Tenant or Landlord hereto shall file suit for breach or enforcement of this Agreement, the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees in addition to any other remedies available herein or permitted by law.

**15. Rules and Regulations.**

**A.** Tenant is prohibited from adding, changing or in any way altering locks installed on the doors of Property without prior written permission of Landlord.  If all keys to the Property are not returned when Tenant vacates the Property, Landlord may charge a re-key charge in the amount of $ ___150.00___ .

**B.** Non-operative vehicles are not permitted on the Property.  Any such non-operative vehicle may be removed by Landlord at the expense of Tenant, for storage or for public or private sale as permitted by applicable law, and Tenant shall have no right or recourse against Landlord thereafter.

**C.** No goods or materials of any kind or description which are combustible or would increase fire risk shall be kept in or placed on the Property (except for goods and materials typically found in a general office use provided that the same are limited in quantity to that normally found in such use).

**D.** No nails, screws or adhesive hangers except standard picture hooks, shade brackets and curtain rod brackets may be placed in walls, woodwork or any part of the Property.

**E.** Tenant shall not place any objects or personal property on the Property in a manner that is inconsistent with the load limits of the Property.  Tenant shall consult Landlord before placing any heavy furniture, file cabinets, or other equipment in the Property.

**F.** If Landlord provides electricity and/or natural gas hereunder, Landlord shall provide heating and air conditioning to the Property between _____ a.m. and _____ p.m., Monday through Friday *(excluding Holidays);* between _____ a.m. and _____ p.m., Saturday; and between _____ a.m. and _____ p.m. Sunday as applicable.  Tenant shall notify Landlord by 4:00 p.m. of the preceding Business Day of any requests for overtime heating and air conditioning.  Landlord may charge Tenant its reasonable costs of providing such overtime heating and air conditioning.

**G.** Tenant shall not, without Landlord's prior consent, use any equipment which uses electric current in excess of 110 volts, which will increase the amount of electricity ordinarily furnished for use of the Property as herein designated, or which requires clean circuits or other distribution circuits.

**H.** Landlord may establish additional reasonable Rules and Regulations concerning the maintenance, use, and operation of the Property. A copy of any current additional Rules and Regulations are attached in Exhibit ____ and are a part of this Lease.  Amendments and additions to the Rules and Regulations shall be effective upon delivery of a copy thereof to Tenant and do not require Tenant's signature to be effective.

**16. Abandonment or Vacating the Property.**

**A. Abandonment.** If Tenant removes or attempts to remove personal property from the Property other than in the usual course of continuing occupancy, without having first paid Landlord all monies due, the Property may be considered abandoned.  In the event of abandonment, Landlord shall have the right to terminate the Lease.

**B. Vacating Premises.** If Tenant removes personal property from the Property and/or ceases to do business at the Property before the termination of this Lease and any extensions thereof, Tenant shall be in default of this Lease. Landlord shall then have the right to exercise any of his remedies as contained herein or as available at law.

**17. Estoppel Certificate.** Tenant shall, from time to time, upon Landlord's request execute, acknowledge, and deliver to Landlord, within ten (10) days of such request, a certificate certifying: (a) that this Lease is unmodified and in full force and effect (or if there has been modification thereof, that the same is in full force and effect as modified and stating the nature thereof); (b) that to the best of its knowledge there are no uncured defects on the part of the Landlord (or if any such

This form is copyrighted and may only be used in real estate transactions in which _____ **Judy Holley** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

defaults exist, a specific description thereof); (c) the date to which any Rents or other charges have been paid in advance; and (d) any other reasonable matters requested by Landlord. Landlord and any prospective purchaser or transferee of Landlord's interest hereunder or any then existing or prospective mortgagee or grantee of any deed to secure debt may rely on such certificates.

**18. Alteration and Improvements.** Tenant shall not make or allow to be made any alterations, physical additions, or improvements in or to the Property without first obtaining Landlord's prior written consent. Landlord may grant or withhold such consent within its reasonable discretion and may impose reasonable discretion upon its consent. All costs of any such alteration, addition, or improvement shall be borne by Tenant, unless otherwise agreed in writing. The provisions of the Work Letter, attached hereto as Exhibit **B-1** and a part of this Lease, shall govern any alterations or improvements to be performed prior to the Commencement Date of this Lease. Upon the Expiration Date of this Lease and any renewal terms or Hold Over periods, Tenant agrees to return the Property, at Landlord's sole discretion, in its original condition, normal wear and tear excepted.

**19. Destruction of Property.**

A. If earthquake, fire, storm, or other casualty shall totally destroy (or so substantially damage as to be untenantable) the Property, Rent shall abate from the date of such destruction. Landlord, at his sole discretion, shall have the right to determine whether restoration of the Property will be undertaken. Landlord shall have ☒ *sixty (60) days* OR ☐ _____ days from date of destruction to provide notice to Tenant as to whether restoration shall be undertaken.

If restoration shall not be undertaken, Landlord shall give Tenant ☒ *thirty (30) days* OR ☐ _____ days written notice of Termination whereupon Rent and all other obligations herein shall be adjusted between the parties as of the date of such destruction. If restoration shall be commenced, the restoration of the Property to a tenantable condition shall be completed within one hundred eighty (180) days from the date of destruction.

In the event the Landlord elects to complete such restoration, but fails to do so within one hundred eighty (180) days following such destruction, this Lease shall be terminated unless otherwise agreed to by the parties in writing.

In the event that Landlord determines that restoration cannot be completed as above, Landlord may, at his sole discretion, elect to relocate Tenant to comparable space belonging to Landlord at Landlord's expense. If Tenant objects to such relocation, Tenant may terminate this Lease with written notice to Landlord within ten (10) days after receipt of such notice from Landlord whereupon Rent and all other obligations hereunder shall be adjusted between the parties as of the date of such destruction. If such notice is not given, then this Lease shall remain in force.

B. If the Property is damaged but not rendered wholly untenantable and/or unusable for its intended purpose by earthquake, fire, flood, storm, or other casualty, Rent shall abate in such proportion as the Property has been damaged as determined by casualty insurance carrier (or in the absence of casualty insurance carrier, by Landlord), and Landlord shall restore the Property as reasonably quickly as practicable whereupon all Rent shall commence.

C. Rent shall not abate nor shall Tenant be entitled to terminate this Lease if the damage or destruction of the Property whether total or partial, is the result of the negligent or intentional acts of Tenant, its contractors, employees, agents, invitees, guests, or licensees.

**20. Insurance.** Tenant agrees that during the Term of the Lease and any extensions or Hold Over periods thereof, Tenant will carry and maintain, at its sole cost, the following types of insurance, in the amounts specified and in the form hereinafter provided. All insurance policies procured and maintained herein (other than workers' compensation insurance) shall name Landlord, Landlord's property manager(s), Landlord's Broker(s) and Landlord's lender as additional insured, shall be carried with insurance companies licensed to do business in the State of Tennessee and having a current financial strength rating in Best's Rating of not less than B+. Such insurance policies or, at Landlord's election, duly executed certificates of such policies, accompanied by proof of the payment of the premium for such insurance, shall be delivered to Landlord before the earlier of (a) the initial entry by contractor/subcontractor upon the Property for the installation of its equipment or improvements, or (b) the Commencement Date of the Lease. Certificates of renewal of such insurance or copies of any replacement insurance policies, accompanied by proof of payment of the premiums for such insurance, shall be delivered to Landlord at least ten (10) days before the expiration of each respective policy term. Tenant shall include a provision in any and all insurance policies wherein the insurance provider agrees to provide notice to all entities designated as additional insureds in the event of nonpayment of premiums or cancellation of policy.

Tenant shall comply with all rules and regulations applicable to the Property issued by the Tennessee Board of Fire Prevention or by any body hereinafter constituted exercising similar functions. Tenant shall not intentionally do anything, or permit anything to be done, on or about the Property that might adversely affect, contravene, or impair any policies of insurance that are in force for the Property or any part thereof. Tenant shall pay all costs, damages, expenses, claims, fines or penalties incurred by Landlord or Tenant because of Tenant's failure to comply with this Paragraph. Tenant indemnifies

This form is copyrighted and may only be used in real estate transactions in which _____ **Judy Holley** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

TENNESSEE REALTORS
Copyright 2015 © Tennessee Realtors®
CF421 – Commercial Lease Agreement, Page 7 of 14

Version 01/01/2019

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

Landlord from all liability with reference thereto. *[Check all that apply. The sections not marked shall not be part of this Agreement]*:

☒ **A. General Commercial Liability Insurance (or reasonable equivalent thereto).** Such insurance shall cover Property and Tenant's use thereof against claims for personal injury, bodily injury or death, property damage and products liability occurring upon, in, or about the Property. The limits of such policy shall be in such amounts as Landlord may from time to time reasonably require, but in any event not less than **Two Million** Dollars ($ **2,000,000.00**) for each occurrence. Such insurance shall be endorsed to cover independent contractors and contractual liability. Such insurance shall extend to any liability of Tenant arising out of the indemnities provided for in this Lease.

☒ **B. Fire and Extended Coverage Insurance (or reasonable equivalent thereto).** Such insurance shall cover Tenant's interest in its improvements to the Property, and all furniture, equipment, supplies, inventory, and other property owned, leased, held or possessed by it and contained therein. Such insurance coverage shall be in an amount equal to not less than **one hundred** percent ( **100** %) of full replacement cost as updated from time to time during the Term of the Lease or any extensions thereof or Hold Over periods. Tenant shall promptly provide Landlord written notice in the event of any damages to persons or property occurring on the Property from fire, accident, or any other casualty.

☒ **C. Worker's Compensation Insurance (or reasonable equivalent thereto).** Such insurance shall include coverage as required by applicable law.

☒ **D. Contractors Insurance (or reasonable equivalent thereto).** If Tenant engages any contractor or subcontractor to construct improvements or perform any other work on the Property, Tenant shall require that such contractor or subcontractor have in force commercial general liability insurance, including personal injury coverage, contractual liability coverage, completed operations coverage, property damage endorsement, and, for any work which is subcontracted, contractors' protective liability coverage, insuring against any and all liability for injury to or death of a person or persons and for damage to property occasioned by or arising out of such work. The limits of such policy for both damage to property and bodily injury to be in such amounts as Landlord may from time to time reasonably require, but in any event not less than **One Million** Dollars ($ **1,000,000.00** ) for each occurrence. Any such contractor or subcontractor shall also be required to maintain workers' compensation insurance as required by applicable law.

☐ **E. Plate Glass Insurance (or reasonable equivalent thereto).** Such insurance shall cover all plate glass and any glass signage located on the Property.

21. **Taxes.** Tenant shall pay any and all taxes (including assessments and license fees) assessed or imposed upon Tenant's fixtures, furniture, appliances, and personal property located in the Property. *[Check all that apply. The sections not marked shall not be part of this Agreement]*:

☐ **A. Landlord Pays All Property Taxes.** Landlord shall pay all Property Taxes levied against the Property. Tenant shall not pay any Property Taxes levied against the Property.

☐ **B. Tenant Shall Pay Property Taxes.**

☒ **C. Tenant Pays Increases in Property Taxes.** In addition to other rent payments specified in this Lease, Tenant shall pay as Additional Rent the amount by which all Property Taxes on the Property for each tax year exceeds taxes on the Property for the tax year **2019**. On or before the first (1st) day of the Term of this Lease, Landlord will provide Tenant written notice of Landlord's estimate of the Additional Rent payable under this subparagraph. During December of each calendar year or as soon as practicable, Landlord will give Tenant written notice of its estimate of payments to be made for the ensuing calendar year. On the first (1st) day of each month during the Term of the Lease, Tenant will pay one-twelfth (1/12) of the estimated amount in the manner provided in the Rent Paragraph. If notice is not given in December, Tenant will continue to pay on the basis of the prior year's estimate until the month after the notice given. Within ninety (90) days after the close of each calendar year or as soon as practicable thereafter, Landlord will deliver to Tenant (1) a statement of Property Taxes for the calendar year certified by certified public accountants designated by Landlord and (2) a statement of the payments made or to be made for the calendar year that has been prepared on the basis of the certified statement. If on the basis of those statements Tenant owes an amount that is less than the estimated payments for the calendar year previously made by the Tenant, Landlord will pay Tenant the amount of the overpayment within thirty (30) days after delivery of those statements. If on the basis of those statements Tenant owes an amount that is more than the estimated payments for such calendar year previously made by Tenant, Tenant will pay the deficiency to Landlord

This form is copyrighted and may only be used in real estate transactions in which **Judy Holley** is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

TENNESSEE REALTORS
Copyright 2015 © Tennessee Realtors®
CF421 – Commercial Lease Agreement, Page 8 of 14

Version 01/01/2019

Instanet FORMS

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

within thirty (30) days after delivery of those statements. If the Lease commences on a day other than the first (1st) day of the calendar year or ends on a day other than the last day of a calendar year, the amounts payable under this subparagraph shall be prorated.

**22. Condemnation.** If all or any part of the Property is taken or appropriated by any public or quasi-public authority under the power of eminent domain, and if the remaining portion of the Property is thereby rendered untenantable or unusable for the purposes herein stated, this Lease shall terminate when the condemning authority takes possession, and any Rent paid for any period beyond possession by the condemning authority shall be repaid to Tenant. Landlord shall receive the entire condemnation award without deduction therefrom for any interest of Tenant in the Property, but Tenant shall have the right to make a separate claim with the condemning authority for, and to receive therefrom, (a) any moving expenses incurred by Tenant as a result of such condemnation; (b) any costs incurred or paid by Tenant in connection with any alteration or improvement made by Tenant to the Property; (c) the value of Tenant's personal property taken; (d) Tenant's loss of business income; and (e) any other separate claim which Tenant may be permitted to make under applicable law, provided that such other separate claims shall not reduce or adversely affect the amount of Landlord's award.

**23. Disclaimer.** Tenant and Landlord acknowledge that they have not relied upon any advice, representations or statements of Brokers (including their firms and affiliated licensees) and waive and shall not assert any claims against Brokers (including their firms and affiliated licensees) involving same. It is understood and agreed that the real estate firms and real estate licensee(s) representing or assisting Landlord and/or Tenant and their brokers (collectively referred to as "Brokers") are not parties to this Agreement and do not have or assume liability for the performance or nonperformance of Landlord or Tenant. Tenant and Landlord agree that Brokers, their firms and affiliated licensees shall not be responsible for any of the following, including but not limited to, matters which could have been revealed through a survey, title search or inspection of the Property; for any geological issues present on the Property; for any issues arising out of the failure to physically inspect Property prior to entering into this Agreement or date of possession; for the condition of the Property, any portion thereof, or any item therein; for building products and construction techniques; for the necessity or cost of any repairs to the Property; for hazardous or toxic materials; for termites and other wood destroying organisms; for square footage; for acreage; for the availability and cost of utilities, septic or community amenities; for proposed or pending condemnation actions involving Property; for the tax or legal consequences of this transaction; for the appraised or future value of the Property; and for any condition(s) existing off the Property which may affect the Property; for the terms, conditions and availability of financing; and for the uses and zoning of the Property whether permitted or proposed. Tenant and Landlord acknowledge that Brokers, their firms, and affiliated licensees are not experts with respect to the above matters and that, if any of these matters or any other matters are of concern to them, they shall seek independent expert advice relative thereto. Tenant further acknowledges that in every neighborhood there are conditions which different tenants may find objectionable. Tenant shall therefore be responsible to become fully acquainted with neighborhood and other off-site conditions which could affect the Property.

**24. Agency and Brokerage.**

   **A. Agency.**

      (1) In this Agreement, the term "Broker" shall mean a licensed Tennessee real estate broker or brokerage firm and, where the context would indicate, the broker's affiliated licensees. No Broker in this transaction shall owe any duty to Tenant or Landlord greater that what is set forth in their broker engagements, the Tennessee Real Estate Broker License Act of 1973, as amended, and the Tennessee Real Estate Commission Rules, as amended.

      (2) A Designated Agent is one who has been assigned by his/her Managing Broker and is working as an agent for the Landlord or Tenant in a prospective transaction, to the exclusion of all other licensees in his/her company.

      (3) An Agent for the Landlord or Tenant is a type of agency in which the licensee's company is working as an agent for the Landlord or Tenant and owes primary loyalty to that Landlord or Tenant.

      (4) A Facilitator relationship occurs when the licensee is not working as an agent for either party in this consumer's prospective transaction. A Facilitator may advise either or both of the parties to a transaction but cannot be considered a representative or advocate for either party. "Transaction Broker" may be used synonymously with, or in lieu of, "Facilitator" as used in any disclosures, forms or agreements. [By law, any licensee or company who has not entered into a written agency agreement with either party in the transaction is considered a Facilitator or Transaction Broker until such time as an agency agreement is established.]

      (5) A dual agency situation arises when an agent (in the case of designated agency) or a real estate firm (wherein the entire real estate firm represents the client) represents both the Landlord and the Tenant.

      (6) Landlord and Tenant acknowledge that if they are not represented by a Broker they are each solely responsible for their own interests and that Broker's role is limited to performing ministerial acts for that unrepresented party;

This form is copyrighted and may only be used in real estate transactions in which _____ **Judy Holley** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

 TENNESSEE REALTORS   Copyright 2015 © Tennessee Realtors®                     **Version 01/01/2019**
CF421 – Commercial Lease Agreement, Page 9 of 14

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

**B. Agency Disclosure.**

(1) The Broker, if any, working with the Landlord is identified on the signature page as the "Listing Broker", and said Broker is (Select One. The items not selected are not part of this Agreement):

□ the Designated Agent for the Landlord,

□ the agent for the Landlord,

□ a Facilitator for the Landlord, OR

□ a dual agent.

(2) The Broker, if any, working with the Tenant is identified on the signature page as the "Leasing Broker", and said Broker is (Select One. The items not selected are not part of this Agreement):

☒ the Designated Agent for the Tenant,

□ the agent for the Tenant,

□ a Facilitator for the Tenant, OR

□ a dual agent.

(3) **Dual Agency Disclosure.** *[Applicable only if dual agency has been selected above.]* Landlord and Tenant are aware that Broker is acting as a dual agent in this transaction and consent to the same. Landlord and Tenant have been advised that:

    1. In serving as a dual agent the Broker is representing two clients whose interests are, or at times could be, different or even adverse;

    2. The Broker will disclose all adverse, material facts relevant to the transaction, and actually known to the dual agent, to all parties in the transaction except for information made confidential by request or instructions from another client which is not otherwise required to be disclosed by law;

    3. The Landlord and Tenant do not have to consent to dual agency; and

    4. The consent of the Landlord and Tenant to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.

    5. Notwithstanding any provision to the contrary contained herein, Landlord and Tenant each hereby direct Broker, if acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position, unless required to disclose by law.

(4) **Material Relationship Disclosure.** *[Required with dual Agency.]* The Broker and/or affiliated licensees have no material relationship with either client except as follows: _____ ---- _____. A material relationship means one of a personal, familial or business nature between the Broker and affiliate licensees and a client which would impair their ability to exercise fair judgment relative to another client.

               Landlord's Initials _____        Tenant's Initials _____

**C. Brokerage.** Brokers listed below have performed a valuable service in this transaction and are made third party beneficiaries hereunder only for the purposes of enforcing their commission rights. Payment of commission to a Broker shall not create an agency relationship between Leasing Broker and either Landlord or Landlord's Broker. Landlord agrees to pay the Broker listed below and representing Landlord to lease the Property ("Listing Broker") a commission of: *[Check all that apply. The sections not marked shall not be part of this Agreement]*:

□ Negotiated by separate written agreement.

□ $_____ or _____% of the total Base Rent to be paid under the Lease, which shall be due and payable upon occupancy.

□ $_____ or _____% of Base Rents, which shall be due and payable upon a Tenant's monthly payment of Rent in the manner provided in the Rent Paragraph above. Said Commission shall be paid for the entire Term of the Lease or any extensions thereof or any Hold Over Period, regardless of any breach of this Lease by any party.

□ $_____ OR _____% of Base Rent Payable as follows:
    □ _____% of Commission upon lease execution.
    □ _____% upon Rent commencement or _____% upon occupancy.

This form is copyrighted and may only be used in real estate transactions in which _____ **Judy Holley** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

TENNESSEE REALTORS   Copyright 2015 © Tennessee Realtors®           Version 01/01/2019
CF421 – Commercial Lease Agreement, Page 10 of 14

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

☐ plus _____ % of Base Rent on any renewals and/or extensions thereof payable on the 1st day of renewal or extension period.

☒ Other
**As described in Exhibit B.**

In the event the Lease is made in cooperation with another Broker listed below as the Leasing Broker, the Listing Broker shall receive _--_ % of the total real estate commission paid hereunder and the Leasing Broker shall receive _--_ % of the total real estate commission paid hereunder. In the event Tenant and/or Landlord fail or refuse to perform any of their obligations herein, the non-performing party shall immediately pay the Listing Broker and the Leasing Broker their full commissions. The Listing real estate firm and Leasing real estate firm may jointly or independently pursue the non-performing party for that portion of the commission which they would have otherwise received under the Lease.

**25. Other Provisions.**

A. **Time of Essence.** Time is of the essence in this Lease.

B. **No Waiver.** Any failure of Landlord to insist upon the strict and prompt performance of any covenants or conditions of this Lease or any of the rules and regulations set forth herein shall not operate as a waiver of any such violation or of Landlord's right to insist on a prompt compliance in the future of such covenant or condition, and shall not prevent a subsequent action by Landlord for any such violation. No provision, covenant or condition of this Lease may be waived by Landlord unless such waiver is in writing and signed by Landlord.

C. **Definitions.**
   1. Landlord as used in this Lease shall include its representatives, heirs, agents, assigns, and successors in title to Property.

   2. Broker shall mean a licensed Tennessee real estate broker or brokerage firm and, where the context would indicate, the Broker's affiliated licensees.

   3. "Landlord" and "Tenant" shall include singular and plural, and corporations, partnerships, companies or individuals, as may fit the particular circumstances.

   4. Property Taxes means any form of real or personal property taxes, assessments, special assessments, fees, charges, levies, penalties, service payments in lieu of taxes, excises, assessments, and charges for transit, housing, or any other purposes, impositions or taxes of every kind and nature whatsoever, assessed or levied by any authority having the power to tax against the Property or any legal or equitable interest of Landlord in the Property, whether imposed now or in the future, excepting only taxes measured by the net income of Landlord from all sources.

   5. Business Days shall mean Monday through Friday, excluding Holidays.

   6. Bank Days shall mean Monday through Saturday at noon, excluding Holidays.

D. **Entire Agreement.** This Lease and any attached addenda constitute the entire agreement between the parties and no oral statement or amendment not reduced to writing and signed by both parties shall be binding. Notwithstanding the above, the Landlord may provide amendments and/or additions to the Rules and Regulations which shall be effective upon delivery of a copy thereof to Tenant and do not require the signature of the Tenant. It is hereby agreed by both Landlord and Tenant that any real estate agent working with or representing either party shall not have the authority to bind the Landlord, Tenant or any assignee to any contractual agreement unless specifically authorized in writing within this Agreement.

E. **Attorney's Fees and Costs of Collection.** Whenever any sums due hereunder are collected by law, or by attorney at law to prosecute such an action, then both parties agree that the prevailing party will be entitled to reasonable attorney's fees, plus all costs of collection.

F. **Indemnification.** Tenant releases Landlord, Broker, Broker's firm and Broker's affiliated licensees from liability for and agrees to indemnify Landlord, Broker, Broker's firm and Broker's affiliated licensees against all losses incurred by Landlord, Broker, Broker's firm and/or Broker's licensees as a result of: (a) Tenant's failure to fulfill any condition of this Lease; (b) any damage or injury happening in or about the Property due to Tenant or Tenant's invitees, employees or licensees or such persons' property, except where such damage or injury is due to gross negligence or willful misconduct of Landlord, Broker, Broker's firm or Broker's affiliated licensees; (c) Tenant's failure to comply

This form is copyrighted and may only be used in real estate transactions in which _____ **Judy Holley** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

AuthentiSign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

with any requirements imposed by any governmental authority; and (d) any judgment lien or other encumbrance filed against the Property as a result of Tenant's actions.

G. **No Partnership.** Tenant by execution of this Lease is not a partner of Landlord in the conduct of its business or otherwise, or joint venturer, or a member of any joint enterprise with Landlord.

H. **No Recordation.** Tenant shall not record this Lease or any short form memorandum thereof without Landlord's prior written consent.

I. **Notices.** Except as otherwise provided herein, all notices and demands required or permitted hereunder shall be in writing and delivered (1) in person, (2) by prepaid overnight delivery service, (3) by facsimile transmission (FAX), (4) by the United States Postal Service, postage prepaid, registered or certified return receipt requested or (5) Email. Notice shall be deemed to have been given as of the date and time it is actually received. Receipt of notice by the Broker representing a party as a client or a customer shall be deemed to be notice to that party for all purposes herein.

| Landlord's address: | Tenant's address: |
|---|---|
| | 670 NW 113th Street |
| P. O. Box 3527 | |
| Chattanooga , TN 37404-0527 | Miami , FL 33165 |
| Fax # | Fax # |
| Email | Email fabiola@blueprintcreativegroup.com |

J. **Governing Law and Venue.** This Agreement may be signed in multiple counterparts and shall be governed by and interpreted pursuant to the laws and in the courts of the state of Tennessee.

K. **Severability.** If any portion or provision of this Agreement is held or adjudicated to be invalid or unenforceable for any reason, each such portion or provision shall be severed from the remaining portions or provisions of this Agreement, and the remaining portions or provisions shall be unaffected and remain in full force and effect.

L. **Terminology.** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; (2) all pronouns shall mean and include the person, entity, firm or corporation to which they relate; (3) the masculine shall mean the feminine and vice versa, and (4) the term day(s) used throughout this Agreement shall be deemed to be calendar day(s) ending at 11:59 p.m. local time unless otherwise specified in this Agreement. Local time shall be determined by the location of Property. **In the event a performance deadline** occurs on a Saturday, Sunday or legal holiday, the performance deadline shall extend to the next following Business Day. Holidays as used herein are those days deemed federal holidays pursuant to 5 U.S.C. § 6103.

M. **Construction.** This Agreement or any uncertainty or ambiguity herein shall not be construed against any party but shall be construed as if all parties to this Agreement jointly prepared this Agreement.

N. **Equal Opportunity.** This Property is being leased without regard to race, color, sex, religion, handicap, familial status, or national origin.

26. **Sale of the Property to Tenant.** Landlord shall pay Leasing Broker a commission in the amount of ___three___ percent ( __3__ %) and Listing Broker a commission in the amount of ___three___ percent ( __3__ %) of the gross sales price at closing or as determined in the Special Stipulations paragraph of this Agreement if Tenant acquires from Landlord title to Property or any part thereof of any property as an addition, expansion, or substitution for the Property during the Term of this Lease, any renewals thereof, or within one (1) year after the expiration of this Lease. Such commission shall be payable in lieu of any further commission which otherwise Broker would have been due under this Lease.

27. **Exhibits.** All exhibits attached hereto, listed below or referenced herein are made a part of this Lease. If any such exhibit conflicts with any preceding paragraph, said exhibit shall control.
```
Exhibit A     - Legal Description
Exhibit B     - Special Stipulations
Exhibit B-1 - Landlord Work Letter
Exhibit B-2 - Delivery Letter
```

This form is copyrighted and may only be used in real estate transactions in which ___**Judy Holley**___ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

TENNESSEE REALTORS
Copyright 2015 © Tennessee Realtors®
CF421 – Commercial Lease Agreement, Page 12 of 14

Version 01/01/2019

InstanetFORMS

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

**28. Special Stipulations.** The following Special Stipulations, if conflicting with any preceding paragraph, shall control:

`as described in Exhibit B.`

☒ **(Mark box if additional pages are attached.)**

**LEGAL DOCUMENTS: This is an important legal document creating valuable rights and obligations. If you have questions about it, you should review it with your attorney. Neither the Broker nor any Agent or Facilitator is authorized or qualified to give you any advice about the advisability or legal effect of its provisions.**

**NOTE:** Any provisions of this Agreement which are preceded by a box "☐" must be marked to be a part of this Agreement. By affixing your signature below, you also acknowledge that you have reviewed each page and have received a copy of this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have set their hand and seal.

The party(ies) below have signed and acknowledge receipt of a copy.

| | |
|---|---|
| *9/13/2019 5:02:25 PM EDT* | |
| **TENANT** | **TENANT** |
| By: _Fabiola Fleuranvil_ | By: _____ |
| Title: _Registered Agent_ | Title: _____ |
| Entity: _Progressive Investments Group, LLC_ | Entity: _____ |
| 09/13/2019 _at_ _____ o'clock ☐ am/ ☐ pm | _____ at _____ o'clock ☐ am/ ☐ pm |
| **Date** | **Date** |
| *9/13/2019 12:28:35 PM EDT* | *Ryan T. Hodges* 9/13/2019 12:29:58 PM EDT |
| **LANDLORD** | **LANDLORD** |
| By: _Kevin Wallace_ | By: _Ryan T. Hodges_ |
| Title: _Pastor_ | Title: _Corporate Secretary_ |
| Entity: _Redemption to the Nations_ | Entity: _Redemption to the Nations_ |
| 09/13/2019 _at_ _____ o'clock ☐ am/ ☐ pm | 09/13/2019 _at_ _____ o'clock ☐ am/ ☐ pm |
| **Date** | **Date** |
| Emergency # for repairs _____ | Emergency # for repairs _____ |

The party(ies) below have signed and acknowledge receipt of a copy.

| | |
|---|---|
| *Judy Holley* | *Vicki Trapp* |
| **BY: Broker or Licensee Authorized by Broker** | **Leasing Broker/Firm** 9/13/2019 ... :26 PM EDT |
| 09/13/2019 _at_ _____ o'clock ☐ am/ ☐ pm | 09/13/2019 _at_ _____ o'clock ☐ am/ ☐ pm |
| **Date** | **Date** |
| _Judy S. Holley_ | _Crye-Leike REALTORS_ |
| PRINT/TYPE NAME: | PRINT/TYPE NAME |

The party(ies) below have signed and acknowledge receipt of a copy.

| | |
|---|---|
| **BY: Broker or Licensee Authorized by Broker** | **Listing Broker/Firm** |
| _____ at _____ o'clock ☐ am/ ☐ pm | _____ at _____ o'clock ☐ am/ ☐ pm |
| **Date** | **Date** |
| ---- | ---- |
| PRINT/TYPE NAME: | PRINT/TYPE NAME |

This form is copyrighted and may only be used in real estate transactions in which _____ **Judy Holley** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

TENNESSEE REALTORS
Copyright 2015 © Tennessee Realtors®
CF421 – Commercial Lease Agreement, Page 13 of 14
Version 01/01/2019
InstanetFORMS

Authentisign ID: D2600B45-F224-415D-BC12-ED86D754DFFD

# EXHIBIT A – Legal Description of the Property

See attached Exhibit A.

NOTE: This form is provided by TAR to its members for their use in real estate transactions and is to be used as is. By downloading and/or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. Use of the TAR logo in conjunction with any form other than standardized forms created by TAR is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent available form.

This form is copyrighted and may only be used in real estate transactions in which _____ **Judy Holley** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at 615- 321-1477.

 TENNESSEE REALTORS  Copyright 2015 © Tennessee Realtors®
CF421 – Commercial Lease Agreement, Page 14 of 14

Version 01/01/2019

Authentisign ID: 8A69258B-D81D-4BEB-9DF7-D1C1C302E436

## EXHIBIT A

### Parcel 146O T 017: 1914 Vance Avenue

Lost Fifty-three (53), Fifty-five (55), Fifty-seven (57), Fifty-nine (59), Sixty-one (61), Sixty-three (63), Sixty-five (65), Sixty-seven (67), and Sixty-nine (69), Payne's Subdivision of Highland Park, as shown by plat of record in Plat Book 1, Page 16, in the Register's Office of Hamilton County, Tennessee.

### Parcel 146O T 010: 906 S. Orchard Knob Avenue

Lot One (1), Wright's Subdivision of Lots 54, 56, 58, 60 and 62, Payne's Subdivision to Highland Park, as shown by plat of record in Plat Book 6, Page 49, in the Register's Office of Hamilton County, Tennessee.

### Parcel 146O T 009: 908 S. Orchard Knob Avenue

Lot Two (2), Wright's Subdivision of Lots 54, 56, 58, 60 and 62, Payne's Subdivision to Highland Park, as shown by plat of record in Plat Book 6, Page 49, in the Register's Office of Hamilton County, Tennessee.

### Parcel 146O T 008: 910 S. Orchard Knob Avenue

Lot Three (3), Wright's Subdivision of Lots 54, 56, 58, 60 and 62, Payne's Subdivision to Highland Park, as shown by plat of record in Plat Book 6, Page 49, in the Register's Office of Hamilton County, Tennessee.

### Parcel 146O T 001: 907 S. Beech Street

Being the North Forty-six and 5/10 (46.5) feet of Lots Sixty-six (66), Sixty-eight (68) and Seventy (70), of Payne's Subdivision to Highland Park, as shown by Plat of record in Plat Book 1, Page 16, in the Register's Office of Hamilton County, Tennessee. According to said Plat, said parts of Lots together make one (1) Tract fronting Forty-six and 5/10 (46.5) feet on the Western line of Beech Street and extending Westwardly between parallel lines, a distance of One Hundred Thirty-two (132) feet to the Eastern line of Lot Sixty-four (64) of said subdivision and more particularly described as follows: Beginning on the Western line of Beech Street Ninety-three and one-half (93-1/2) feet Northwardly from the Northwestern intersection of Beech Street Forty-six and 5/10 (46.5) feet to the Southern line of Lot Sixty-nine (69), Sixty-seven (67) and Sixty-five (65), One Hundred Thirty-two (132) feet to the Northwestern corner of said Lot Sixty-six (66); thence Southwardly along the Western line of Lot Sixty-six (66), Forty-six and 5/10 (46.5) feet; thence Eastwardly at right angles One Hundred Thirty-two (132) feet to the point of beginning.

### Parcel 146O T 002: 909 S. Beech Street

Parts of Lots Sixty-six (66), Sixty-eight (68) and Seventy (70), Payne's Subdivision of Highland Park as shown by plat of record in Plat Book 1, Page 16, Register's Office of Hamilton County, Tennessee, and more particularly described as follows: BEGINNING at a point on the Western line of Beech Street, which point is forty-nine and one-half (49-1/2) feet Northwardly from the Northwest corner of Beech and Anderson Streets; thence Westwardly at right angles to Beech Street, one hundred twenty (120) feet to the East Line of an alley; thence Northwardly along the Eastern line of said alley, forty-four feet; thence Eastwardly parallel with Anderson Street one hundred twenty (120) feet to the Western line of Beech Street; thence Southwardly along the Western line of Beech Street, forty-four (44) feet to the point of beginning.

28306_00/1901/KWY-4850-9422-5060_5

Authentisign ID: 8A69258B-D81D-4BEB-9DF7-D1C1C302E436

### Parcel 146O T 003: 1911 Anderson Avenue

The South Forty-nine (49) feet of Lots, Sixty-eight (68) and Seventy (70) and the South Forty-nine (49) feet of the East Forty-five (45) feet of Lot Sixty-six (66), Payne's Subdivision to Highland Park, as shown by plat of record in Plat Book 1, Page 16, in the Register's Office of Hamilton County, Tennessee. According to said plat, said parts of lots together make one tract of ground fronting 49 feet on the West line of Beech Street and extending Westwardly, between parallel lines and along the North line of Anderson Avenue, a distance of 127 feet, more or less, to the East line of a private alley way for the benefit of the property on the North.

### Parcel 146O T 004: 1909 Anderson Avenue

IN THE CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE:
Lot Sixty-four (64), Payne's Subdivision to Highland Park, as shown by plat of record in Plat Book 1, Page 16, in the Register's Office of Hamilton County, Tennessee, EXCEPT the Northern five (5) feet used in creating an alley over the rear of said lot. According to said plat, said part of lot fronts 50 feet on the Northern line of Anderson Avenue, and extends Northwardly, between parallel lines, 135 feet to an alley.

*SUBJECT TO LANDLORD CLOSING ON THE PURCHASE OF THIS PROPERTY. IF THE CLOSING DOES NOT OCCUR FOR ANY REASON, THIS PARCEL 146O T 004 SHALL NOT BE A PART OF THIS LEGAL DESCRIPTION AND TENANT AUTHORIZES LANDLORD TO UNILATERALLY AMEND THE LEASE TO DELETE THIS FROM EXHIBIT A.*

### Parcel 146O T 007: 1903 Anderson Avenue

Lot Four (4), Wright's Subdivision of Lots 54, 56, 58, 60 and 62, Payne's Subdivision to Highland Park, as shown by plat of record in Plat Book 6, Page 49, in the Register's Office of Hamilton County, Tennessee.

### Parcel 146O T 006: 1905 Anderson Avenue

Lot Five (5), Wright's Subdivision of Lots 54, 56, 58, 60 and 62, Payne's Subdivision to Highland Park, as shown by plat of record in Plat Book 6, Page 49, in the Register's Office of Hamilton County, Tennessee.

### Parcel 146O T 005: 1907 Anderson Avenue

Lot Six (6), Wright's Subdivision of Lots 54, 56, 58, 60 and 62, Payne's Subdivision to Highland Park, as shown by plat of record in Plat Book 6, Page 49, in the Register's Office of Hamilton County, Tennessee.

FOR PRIOR TITLE, see Deed from Tennessee Temple University (successor by name change to the interest of Tennessee Temple College) to Redemption to the Nations dated October 1, 2014 and recorded October 2, 2014 in Book 10314, Page 406, in the Register's Office of Hamilton County, Tennessee.

[SEE NEXT PAGE FOR VISUAL]

28306_00/1901/KWY-4850-9422-5060_5

Authentisign ID: 8A69258B-D81D-4BEB-9DF7-D1C1C302E436

The portion of the property outlined in red below that is owned by Landlord (e.g. excluding alleyways) is the property subject to this Lease.



*THE INCLUSION OF PARCEL **146O T 004** IS SUBJECT TO LANDLORD CLOSING ON THE PURCHASE OF THAT PROPERTY. IF THE CLOSING DOES NOT OCCUR FOR ANY REASON, PARCEL **146O T 004** SHALL NOT BE A PART OF THIS LEGAL DESCRIPTION AND TENANT AUTHORIZES LANDLORD TO UNILATERALLY AMEND THE LEASE TO DELETE THIS FROM EXHIBIT A.

28306_00/1901/KWY-4850-9422-5060_5

Authentisign ID: 8A69258B-D81D-4BEB-9DF7-D1C1C302E436

## EXHIBIT B

*Special Stipulations to Commercial Lease Agreement*

**The following Special Stipulations shall apply to the Commercial Lease Agreement (Single-Tenant Facilities) by and between Redemption to the Nations, as Landlord, and Progressive Investments Group, as Tenant (the "Lease"). To the extent that any conflict exists between a provision of the Lease and the terms of this Exhibit B, the terms of this Exhibit B shall control.**

1. DUE DILIGENCE PERIOD: Tenant shall have the right to inspect the Property for a period of ten (10) business days after the Lease Agreement is executed by all parties. ("**Due Diligence Period**"). During the Due Diligence Period, Tenant shall have the right to terminate this Lease, in which event the Lease shall become null and void, and neither party shall have any additional obligations to the other party.

2. OPTION TO EXTEND: Tenant shall have the option to extend the term of this Lease for two (2) periods of three (3) years each, exercisable by written notice to Landlord at least one hundred twenty (120) days prior to the Expiration Date (or the then-current expiration date if Tenant has exercised the first option to extend). Any reference throughout the Lease to the "Term," "Lease Term," "term," or "lease term" (or similar variations of the same) shall mean, collectively, the initial, 6-year term, plus any exercised option term.

3. POSSESSION AND LANDLORD'S WORK: The first two sentences (lines 22-25, plus the word "Tenant" on line 26) of Section 2 of the Lease shall be deleted in their entirety. Upon expiration or waiver of the Due Diligence Period, Landlord will immediately begin performing the work described on the Landlord Work Letter, attached as Exhibit B-1 to the Lease (the "**Landlord Work**"). Landlord estimates that the Landlord Work will be complete on or before 45 days after expiration or waiver of the Due Diligence Period (the "**Estimated Delivery Date**"). The date of completion of the Landlord Work and delivery of possession of the Property to Tenant shall be the "**Commencement Date**." If the Commencement Date does not occur within sixty (60) days after the Estimated Delivery Date, Tenant shall have the right at any time until the Commencement Date occurs to terminate this Lease by written notice to Landlord.

4. TENANT IMPROVEMENTS: Tenant shall conduct the construction and installation of any leasehold improvements as are necessary for Tenant's operation at the Property, all of such work being subject to Landlord's prior approval of plans and specifications and related descriptions for such work (the "**Tenant Improvements**"); provided that Tenant shall not be required to obtain Landlord's approval of any Tenant Improvements that are strictly cosmetic, such as paint or floor coverings, or other clean-up and prep work, without altering the Building. Landlord agrees that Tenant may enter the Property any

28306_00/1901/KWY-4850-9422-5060_5

Authentisign ID: 8A69258B-D81D-4BEB-9DF7-D1C1C302E436

time after expiration of the Due Diligence Period to begin the Tenant Improvements. Upon completion of Landlord's Work, Tenant shall sign a Possession Date Certificate, in the form attached as Exhibit B-2, as evidence that Tenant has inspected the Premises and that Tenant accepts it in its "AS IS" condition as of the Commencement Date.

5. PROJECT FUNDING CONTINGENCY: This Agreement is contingent upon the licensing of this facility by the State of Tennessee for the usage as defined herein. Subject to the requirements of this Section, Tenant shall have the right to terminate this Lease upon written notice to Landlord if the total Federal funding for the Project is denied or eliminated by the U.S. Department of Health and Human Services or other Federal Government Entity (a **"Funding Elimination"**) (and Tenant provides Landlord with written evidence of the funding elimination). The effective date of termination (and the date Tenant shall vacate the Property) shall be seven (7) days after delivery of Tenant's notice of termination, or if Funding Elimination includes a funding ramp-down period and later "Defined Closing Date" (and Tenant has provided the Funding Elimination notice to Landlord) then the Lease and monthly rent payments would continue through the "Defined Closing Date," and Tenant shall vacate the Property within seven (7) days after the Defined Closing Date. Within seven (7) days after Tenant's delivery of the termination notice to Landlord, Tenant will pay to Landlord a one-time Lease termination payment of one-hundred fifty thousand dollars ($150,000.00) (**"Lease Termination Fee"**) as consideration in full for any further obligations under the Lease. Notwithstanding anything to the contrary in the Agreement, this Lease and all rent obligations will continue in full force and effect until Landlord has received the Lease Termination Fee.

6. PERMITTED USE: The Permitted Use contemplates Tenant hosting on the Property no more than Two Hundred (200) children. In the event that Tenant desires (and Landlord agrees) to host a higher number of children, the parties may document the increase and amended Permitted Use pursuant to a Lease amendment. Tenant understands and acknowledges that the Permitted Use shall not include the right to host, perform, or conduct any religious ceremonies or events on the Property, unless expressly approved by Landlord in advance. In the event Tenant desires to host a religious ceremony or event, Landlord shall reasonably assist Tenant in finding a location and other accommodation for such ceremony and event.

7. ADDITIONAL RENT: In addition to the Base Rent and simultaneously with payment of the Base Rent, Tenant shall pay Landlord $1,200 per month to cover certain of Landlord's costs throughout the Term of this Lease.

8. SUBLET: Tenant will have the right to sublease the entire Property to The Baptiste Group, LLC; provided that Tenant shall remain liable under the Lease.

28306_00/1901/KWY-4850-9422-5060_5

Authentisign ID: 8A69258B-D81D-4BEB-9DF7-D1C1C302E436

9. UTILITIES: Without limiting the requirements of Section 8 of the Lease, Tenant shall be obligated to maintain all utility accounts serving the Property in Tenant's own name and Tenant shall pay such costs directly.

10. REPAIRS AND MAINTENANCE: Notwithstanding anything to the contrary in Section 6 of the Lease, if a repair or replacement of one or more heating, ventilation, and air-conditioning system or the plumbing system is required during the first and last twelve (12) months of the lease term, Tenant's obligation to repair or replace the same shall be capped at $2,500.00 in the aggregate (the "**Start-and-End-of-Term Repair Cap**"); and Landlord shall reimburse Tenant for the costs of repair and replacement above the Start-and-End-of-Term Repair Cap (provided that Tenant shall still be responsible for coordinating the work).

11. RIGHT OF ACCESS, SIGNAGE.
    a. Notwithstanding Section 11 of the Lease, due to nature of the business and screening requirements, access is restricted to Tenant-authorized personnel only. No one, including Landlord and Landlord's representatives may enter the property or facilities, without the expressed authorization of Tenant, except in the event of emergency, in which case the terms of Section 11 of the Lease shall prevail.
    b. In connection with any signage Tenant places on the Property (subject to Landlord's prior approval) Tenant shall be obligated to comply with all applicable local ordinances governing signage, and Landlord's approval of any signage shall not impact Tenant's obligation to comply with such local laws.

12. RULES AND REGULATIONS:
    a. The first sentence of #15- A. and D. in its entirety, are eliminated and not part of this Lease; provided, however, that a re-key charge of $150 per lock shall apply.

    b. Under Item #15-E & G, Tenant has Landlord's permission to place in the building heavy furniture, file cabinets and other equipment necessary to conduct their business; provided that Tenant shall be responsible for the repair of any and all damage that results from the use of heavy furniture, file cabinets or other equipment.

13. CERTAIN ALTERATIONS: Notwithstanding anything to the contrary in Section 18, Landlord grants permission to Tenant to make cosmetic changes to the interior of the Building, such as painting and replacing floor coverings. Landlord agrees that Tenant shall also have the right to add modular units and fencing, as necessary, and at Tenant's expense, to certain areas of the Property, subject to Landlord's prior approval of the design, specific location, and other plans and specifications, as reasonably requested by Landlord.

28306_00/1901/KWY-4850-9422-5060_5

14. LANDLORD'S PERSONAL PROPERTY: Landlord hereby grants Tenant, at no additional cost to Tenant, a license to use all of Landlord's personal property (furniture and fixtures) located in the Building during the term of the Lease.

15. PROPERTY INSURANCE: Landlord will carry property insurance throughout the term of the lease equal to 100%, replacement cost of the property (excluding personal property). Tenant will reimburse Landlord for any increase in Landlord's property insurance, which Landlord can reasonably demonstrate was created by Tenant's occupancy on the Property. Tenant shall be solely liable for maintaining insurance on all of Tenant's personal property located on the Property.

16. LIENS: Should any mechanic's or other lien be filed against the Property for any reason whatsoever by reason of Tenant's acts or omissions or because of a claim against Tenant, including in connection with Tenant's construction of the Tenant Improvements. Tenant shall cause the same to be canceled and discharged of record by bond or otherwise within twenty (20) days after notice by Landlord. If Tenant fails to discharge said lien, Landlord shall have the option to declare this Lease in default or Landlord may discharge the lien, in which event Tenant agrees to pay upon demand to Landlord a sum equal to the amount of the lien discharged plus Landlord's administrative costs, reasonable attorneys' fees, damages and expenses that are caused in connection with discharge of the lien.

17. WAIVER OF SUBROGATION: Notwithstanding anything to the contrary in this Lease, Landlord and Tenant each waive any right to recover against the other for damage to or loss of property, real or personal, to the extent that the type of damage or loss, but without regard to the monetary amount of such damage or loss, is actually insured against or is required to be insured against (whichever is greater) by Landlord or Tenant under this Lease. This provision is intended to waive, fully and for the benefit of each party, any rights and/or claims which might give rise to a right of subrogation by any insurance carrier. The coverage obtained by each party pursuant to this Lease shall include, without limitation, a waiver of subrogation by the carrier which conforms to the provisions of this section.

18. RIGHT OF FIRST OFFER: Landlord hereby grants to Tenant the exclusive right of first offer to purchase the Property (or portion of the Property) on the terms and conditions set forth in this Section (the "ROFO"). Landlord covenants and agrees that it will not sell any portion of the Property before October 1, 2021 (the "Hold Period"). If Landlord at any time after the Hold Period desires to market the Property for sale, then, before listing the Property or otherwise making the Property available for sale to third parties, Landlord shall send written notice to Tenant of its intent to sale, including (to the extent in Landlord's possession) a description of the property Landlord seeks to sell, price, and any other terms of sale Landlord would include in a listing or sale offering (the "ROFO Notice"), and Tenant shall have a period of thirty (30) days after the ROFO Notice to make an offer to Landlord to purchase the Property (the "Tenant Offer"). The Tenant

28306_00/1901/KWY-4850-9422-5060_5

Offer shall set forth the terms under which Tenant would agree to purchase the Property, including but not limited to a fixed purchase price, the time and manner by which the purchase price will be paid, the closing date, allocation of any closing costs, and any other terms or conditions. Landlord shall consider the Tenant Offer, and if Landlord accepts the terms of the Tenant Offer, Landlord shall within thirty (30) days after receipt of the Tenant Offer, send written notice of acceptance to Tenant, and the parties shall thereafter execute a purchase agreement consistent with the Tenant Offer. Unless Tenant timely exercises its ROFO by sending a Tenant Offer, Landlord accepts the Tenant Offer, and Tenant thereafter consummates the purchase of the Property in accordance with the Tenant Offer, then Landlord shall have the right to market the Property (or respective portion) to third-party purchasers, and shall have no further obligation to communicate with Tenant about purchasing the Property (or respective portion); provided that if Landlord sells a portion of the Property to a third party (after following all steps required in this Section), that sale shall not defeat Tenant's ROFO and other rights described in this Section to the remainder of the Property.

Landlord shall have no obligation to accept the Tenant Offer if the terms of the Tenant Offer are not acceptable to Landlord in Landlord's sole discretion; provided, however, that Landlord shall not sale or list the Property for sale at terms equal to or better (for Purchaser) than those included in the Tenant Offer. In the event Landlord receives an offer from a third-party purchaser at the same or better (for Purchaser) terms than those in the Tenant Offer (and only if related to the same portion of the Property included in the Tenant Offer), and Landlord is willing to accept the offer (the "**Third Party Equal Offer**"), Tenant shall at that point (but not otherwise) have a right of first refusal to purchase the Property at the terms included in the Third Party Equal Offer (the "**ROFR**"). Landlord shall send Tenant notice of any Third Party Equal Offer, and Tenant shall have ten (10) days from receipt of such notice (the "**Notice Period**") to elect by written agreement delivered to Landlord to purchase the Property (or respective portion) upon the same terms and conditions as set forth in the Third Party Equal Offer. If Tenant does not exercise the ROFR within ten (10) days, then Landlord may, at any time after the expiration of the Notice Period, sell the Property (or respective portion) to the proposed purchaser upon terms and conditions no more favorable to the purchaser than those set forth in the Third Party Equal Offer. Except in the event of a Third Party Equal Offer following Tenant sending Landlord a Tenant Offer, as specifically set forth in this Section, Tenant shall not have a right of first refusal to purchase the Property.

19. CONFIDENTIALITY: Landlord and Tenant will maintain strict confidentiality of the terms of this Lease. Notwithstanding the foregoing, the parties shall have the right to disclose information with respect to the Lease to officers, directors, employees, attorneys, accountants, environmental auditors, engineers, state licensing, federal funding agencies and other consultants (collectively, "**Related Parties**") to the extent necessary in connection with carrying out this Lease and provided that all Related Parties are told that such information is confidential and agree to keep such information confidential. If

28306_00/1901/KWY-4850-9422-5060_5

Authentisign ID: 8A69258B-D81D-4BEB-9DF7-D1C1C302E436

Tenant acquires the Property in accordance with this Lease, then neither party shall have the right to publicize the transaction without the consent of the other party as to the content of any such publication. The provisions of this Section shall survive termination of this Lease and/or the closing of any purchase of the Property.

20. BROKERAGE COMMISSION: Landlord shall pay to Crye-Leike Realtors ("**Broker**") an amount equal to 6% of the Base Rent paid to Landlord under this Lease. Landlord shall make payments to Broker in accordance with the following schedule:

    a. 6% of the first year's Base Rent (6% of $480,000.00 = $28,800), payable upon Landlord's receipt of the advance payment of the first year of Base Rent from Tenant.

    b. 6% of the subsequent years' Base Rent on an annual basis thereafter throughout the Term and any holdover period, on or before March 31st of each year, beginning in 2021.

    c. Notwithstanding anything to the contrary in this Lease, Landlord's obligation to pay brokerage commission shall automatically cease and be of no further force and effect if Tenant exercises its termination right set forth in Section 5 of this Exhibit B, or if Tenant otherwise ceases payments of Base Rent or vacates the Property.

Tenant represents and warrants that there are no brokers involved in this transaction other than Broker, and Tenant shall indemnify, defend and hold harmless Landlord from and against any costs, claims or expenses, including reasonable attorneys' fees, arising out of any claim or demand for brokerage commission, fee, or other payment other than as set forth in this Section. The provisions of this Section shall survive the expiration or termination of this Lease.

28306_00/1901/KWY-4850-9422-5060_5

Authentisign ID: 8A69258B-D81D-4BEB-9DF7-D1C1C302E436

## EXHIBIT B-1

### Landlord's Work Letter

Landlord shall perform the following Landlord's Work:

1.  The following renovations to the 5th floor of the Building:
    a.  Inspect for mold and mildew and remediate, repair, or replace any items that have mold or mildew damage (such as replacing floor coverings, painting and performing other remediation to the ceiling, etc.).
    b.  Not prior to the Commencement Date, but upon request from Tenant based on when Tenant needs use of the rooms, install HVAC units to support each room that Tenant will use.

2.  Landlord shall install a fire alarm system in the Building to pass local fire inspection codes for the Permitted Use (provided that installation of the sprinkler heads and any other components other than the alarm system itself shall be Tenant's sole responsibility, whether or not the fire code would require sprinklers or such other components).

28306_00/1901/KWY-4850-9422-5060_5

Authentisign ID: 8A69258B-D81D-4BEB-9DF7-D1C1C302E436

## EXHIBIT B-2

### Delivery Letter

DATE: _____, 2019

The Baptiste Group
670 NW 113th Street
Miami, FL 33165
fabiola@blueprintcreativegroup.com

### Re: The Baptiste Group, Delivery of Premises with Landlord's Work Completed

Dear Sir/Madame,

Welcome to the Property. We look forward to working together under the Lease. This letter shall serve as written notice that Landlord has completed the Landlord's Work and on the date of this letter is delivering the Premises in the condition described in the Lease; therefore the date of this letter shall be the Commencement Date, as used in the Lease.

**[Please contact me to obtain the keys for the Premises.]** OR **[Landlord has previously delivered to Tenant the keys to the Premises.]** Please provide a Certificate of Insurance (COI) with limits set in accordance with the lease, naming **Redemption to the Nations** as additional insured.

Best,

_____

[Redemption to the Nations]

Cc: Progressive Investments Group

Please acknowledge your acceptance of the Premises and verification of the information above by signing below and returning a copy to me. By signing below you represent all of Landlord's obligations to date, per the lease, have been satisfied, the lease is in full force and effect, all of Landlord's Work has been substantially completed in accordance with the Lease and Tenant accepts the Leased Premises.

Signed:_____      Date:_____

28306_00/1901/KWY-4850-9422-5060_5